**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
RONALD A. DIBIASE,

                         Plaintiff,

            - against -

GEORGE BARBER, KENNETH FELDMAN,
RICHARD LEUTE, SUZANNE MEYERS,
ANTHONY PARLATORE,
JOHN WASTIEWITZ, THE SETAUKET
FIRE DISTRICT BOARD OF
COMMISSIONERS, and THE SETAUKET
FIRE DISTRICT,

                         Defendants.
-----------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 06-5355 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

      Plaintiff Ronald DiBiase commenced this lawsuit against Defendants George Barber, Kenneth Feldman, Richard Leute, Suzanne Meyers, Anthony Parlatore, John Wastiewitz, the Setauket Fire District Board of Commissioners (the "Board"), and the Setauket Fire District (the "Fire District") (collectively, the "Defendants"), asserting that: (1) Defendants violated New York State Labor Law Section 740 and New York State Civil Service Law Section 75 by terminating Plaintiff's employment; (2) Defendants violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution as well as Plaintiff's civil rights as provided in 42 U.S.C. § 1983 by terminating his employment; and (3) Defendants breached Plaintiff's employment contract.

      Before the Court is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(c). [DE 27]. In connection with their motion papers, Defendants submitted a Statement of

Material Facts pursuant to Local Civil Rule 56.1 ("Defs. 56.1 Stmt") [DE 27, Attachment 2]. By Order dated January 28, 2008 [DE 32], the Court noted that although Plaintiff submitted a separate statement of additional facts as to which Plaintiff contends there exist genuine issues of fact ("Pl. Initial 56.1 Stmt") [DE 31, Ex.1], Plaintiff failed to submit a statement containing correspondingly numbered paragraphs responding to each numbered paragraph in Defendants' Rule 56.1 Statement.[1] Pursuant to the Court's January 28 Order, Plaintiff submitted a revised Rule 56.1 Statement which complied with the Court's directives ("Pl. Revised 56.1 Stmt") [DE 33]. Subsequently, with leave of the Court, Defendants submitted an additional statement containing correspondingly numbered paragraphs responding to the additional facts contained in Plaintiff's revised Rule 56.1 Statement ("Defs. Response to Pl. Revised 56.1 Stmt") [DE 35].

The Court has considered all of the parties' written submissions as well as the applicable case law. For the reasons set forth herein, Defendants' motion for summary judgment is GRANTED.

## II.    FACTUAL BACKGROUND

The following facts are drawn from the parties' Rule 56.1 Statements and are undisputed unless otherwise noted. Defendant Setauket Fire District is a fire district organized under Article 11 of the New York Town Law. Defs. 56.1 Stmt ¶ 1; Pl. Revised 56.1 Stmt ¶ 1.[2] Plaintiff began

---

[1]    Defendants also noted this deficiency, and submitted a response to Plaintiff's initial Rule 56.1 Statement that contained correspondingly numbered paragraphs responding to each numbered paragraph in Plaintiff's initial Rule 56.1 Statement ("Defs. Response to Pl. Initial 56.1 Stmt"). [DE 29].

[2]    According to the Complaint, Defendants Barber, Feldman, Leute, Meyers, Parlatore and Wastiewiz were publicly-elected Fire Commissioners for the Fire District at various points between January 1992 and the filing of the Complaint. In addition, Defendant Feldman is a volunteer member of the Setauket Fire Department and Defendants Meyers, Barber, Parlatore

his employment with Defendant Setauket Fire District in 1988 and began serving in the position of Setauket Fire District Manager in September 1993. Defs. 56.1 Stmt ¶¶ 3,5; Pl. Revised 56.1 Stmt ¶¶ 3,5. The position of Fire District Manager is a civil service position governed by the New York Civil Service Law. Defs. 56.1 Stmt ¶ 2; Pl. Revised 56.1 Stmt ¶ 2. On September 1, 1993, Plaintiff signed an employment contract with Defendant Setauket Fire District to perform the duties of District Manager for the period between September 1, 1993 through August 31, 1998. Defs. 56.1 Stmt ¶ 6, Ex. A; Pl. Revised 56.1 Stmt ¶ 6. On December 1, 1998, Plaintiff signed a new employment contract with Defendant Setauket Fire District to work as District Manager for the period covering January 1, 1999 through December 31, 2008. Defs. 56.1 Stmt ¶ 7, Ex. A; Pl. Revised 56.1 Stmt ¶ 1.

Plaintiff's new employment contract contained the following provisions:

> 7(b) The Setauket Fire District shall have the right to terminate this employment contract without cause, upon six (6) months prior written notice to Ronald A. DiBiase, and shall pay him one (1) year's salary (based on the current year's salary) as severance pay upon such termination.

> 7(c) The Setauket Fire District shall have the right to terminate this employment contract upon a finding of good cause for discharge in accordance with the N.Y.S. Civil Service Law, and should discharge for cause be made, it shall be without severance pay.

Defs. 56.1 Stmt, Ex. A; Pl. Revised 56.1 Stmt ¶ 30; Defs. Response to Pl. Revised 56.1 Stmt ¶ 30.

Beginning in March 2002, Plaintiff notified the Board that Defendant Commissioner Feldman had "entered into the District's computer records management system [also known as

---

and Wastiewiz are all volunteer firemen for the Fire District.

the RedAlert system] using another employee's password and falsified his personal records." Pl. Initial 56.1 Stmt ¶ 7. Although Defendants do not appear to deny that Plaintiff made this accusation, Defendants assert that Commissioner Feldman did not "purposefully falsif[y] his personal records." Defs. Response to Pl. Initial 56.1 Stmt ¶ 7. In February 2003, Plaintiff notified the Board that Commissioner Feldman has issued a Fire Department Photo Identification Card to his girlfriend's son, who was not a member of the Setauket Fire Department. The Board determined that this conduct was improper and possibly illegal and ordered Commissioner Feldman to return the identification card. Pl. Initial 56.1 Stmt ¶ 9; Defs. Response to Pl. Initial 56.1 Stmt ¶ 9.

More than a year later, in April 2004, Plaintiff notified David Sterne, the lead paramedic for the Setauket Fire District, that he was failing to perform his job duties. Plaintiff further notified the Board that there were several "recurring issues" with Mr. Sterne's performance as lead paramedic, Attorney Aff'n of Robert J. Valli, Jr. ("Valli Aff'n"), Ex. 5, and Plaintiff intended to relieve Mr. Sterne of his duties as lead paramedic. Pl. Initial 56.1 Stmt ¶¶ 10, 11; Defs. Response to Pl. Initial 56.1 Stmt ¶ 10, 11. Plaintiff maintains that he had the authority to relieve Mr. Sterne of his duties because Plaintiff, as District Manager, was empowered to reorganize the Fire District's operations and procedures as necessary. Pl. Initial 56.1 Stmt ¶ 12. Defendants dispute this characterization of the scope of Plaintiff's job duties and contend that Plaintiff had no supervisory responsibility for firefighting personnel. Defs. Response to Pl. Initial 56.1 Stmt ¶ 12.

On April 14, 2004, Plaintiff sent the Board a letter stating that he believed he was being subjected to a "hostile work environment" in response to his public statements about Defendant

Commissioner Feldman and Mr. Sterne.  Pl. Initial 56.1 Stmt ¶ 13; Defs. Response to Pl. Initial 56.1 Stmt ¶ 13.  On April 28, 2004, Plaintiff received a "counseling memorandum" dated April 14, 2004.   Defs. 56.1 Stmt ¶ 8; Pl. Revised 56.1 Stmt ¶ 8.  While Defendants characterize the memorandum as "outlining several tasks the Board wanted Mr. DiBiase to comply with," Defs. 56.1 Stmt ¶ 8, Plaintiff claims that the "Board demanded that [he] continue to do things which were already being performed."  Pl. Revised 56.1 Stmt ¶ 8.

Plaintiff wrote a response to the counseling memorandum that refuted numerous statements contained therein.  Pl. Initial 56.1 Stmt ¶ 16; Defs. Response to Pl. Initial 56.1 Stmt ¶ 16.  Subsequently, Plaintiff received a letter from an attorney for the Fire District which stated: "Nowhere in [the counseling memorandum] was it stated that you were not already performing satisfactorily.  They were intended as directives to be followed going forward."  Pl. Initial 56.1 Stmt, Ex. 11.

On November 30, 2004, Defendant Feldman, the Fire Commissioner for the Setauket Fire District, delivered to Plaintiff a cover letter enclosing charges of misconduct.  Defs. 56.1 Stmt ¶ 9; Pl. Revised 56.1 Stmt ¶ 9.  Plaintiff was suspended from his employment effective that same day.  Defs. 56.1 Stmt ¶ 10; Pl. Revised 56.1 Stmt ¶ 10.  Defendants maintain that Plaintiff was suspended in connection with the charges of misconduct, Defs. 56.1 Stmt ¶ 10, while Plaintiff contends that he was suspended "in retaliation for his speech relating to several of the charges."  Pl. Revised 56.1 Stmt ¶ 10.  By letter dated December 19, 2004, Plaintiff's counsel, Leeds, Morelli & Brown, answered the charges of misconduct by denying each allegation.  Defs. 56.1 Stmt ¶ 11, Ex. B; Pl. Revised 56.1 Stmt ¶ 11.

Hearing Officer Ronald J. Betso was designated by the Board, pursuant to Section 75 of the New York State Civil Service Law, to conduct a hearing on the charges of misconduct that had been raised against Plaintiff. This hearing commenced on February 17, 2005.[3] *See* Defs. 56.1 Stmt, Ex. O; Defs. 56.1 Stmt ¶ 12; Pl. Revised 56.1 Stmt ¶ 12. At the commencement of the hearing, Hearing Officer Betso entered onto the record a document entitled "Amended Charges of Misconduct Against Ronald DiBiase, District Manger, Under Section 75 of the Civil Service Law." Defs. 56.1 Stmt, Ex. O at 3, C; Defs. 56.1 Stmt ¶ 13; Pl. Revised 56.1 Stmt ¶ 13. This document set forth sixteen specifications of misconduct. Defs. 56.1 Stmt, Ex. O at 4.

Plaintiff confirmed on the record that he was represented by counsel for the purposes of this hearing. Defs. 56.1 Stmt ¶ 14; Pl. Revised 56.1 Stmt ¶ 14. The hearing continued on March 15, 2005, April 1, 15, and 21, 2005, and June 7, 2005, and concluded on June 10, 2005. Defs. 56.1 Stmt ¶ 15; Pl. Revised 56.1 Stmt ¶ 15. On June 10, 2005, the following exchange took place just prior to the close of the testimony portion of the hearing:

> MR. BETSO: Would you acknowledge for the record that you has a full and fair hearing?
>
> Mr. DIBIASE: Yes, I have. Thank you.

Defs. 56.1 Stmt, Ex. T at 1518; Defs. 56.1 Stmt ¶ 16; Pl. Revised 56.1 Stmt ¶ 16.

On August 2, 2005, Hearing Officer Betso rendered his decision in which he found that twelve of the specifications of misconduct were supported by the evidence, three of the specifications were not supported by the evidence, and the sixteenth specification was "a

---

[3]     Pursuant to Section 75 of the New York Civil Service Law, a civil service employee such as Plaintiff "shall not be removed or otherwise subjected to any disciplinary penalty . . . except for incompetency or misconduct shown after a hearing upon stated charges pursuant to this section." N.Y. Civ. Serv. Law § 75(1).

summation rather than a charge." Defs. 56.1 Stmt ¶ 17; Pl. Revised 56.1 Stmt ¶ 17. After receiving the Hearing Officer's decision, however, Plaintiff asserts that he did not have "a full and fair hearing given the irrational results and findings contrary to the facts submitted and drawn out during the course of the hearing." Pl. Revised 56.1 Stmt ¶ 16. Plaintiff does not agree that any of the specifications of misconduct were supported by the evidence. Pl. Revised 56.1 Stmt ¶ 17.

Hearing Officer Betso's recommendation to the Board contained the following concluding thoughts:

> While the Respondent contends that he was subject to retaliatory action by the Board, and specifically Commissioner Feldman, for his reporting on Commissioner Feldman's alleged unauthorized access into the Red Alert system and his attempt to have an identification card issued to a non-member of the Setauket Fire District there is no credible evidence to support this contention . . . [B]oth instances were promptly reported to the Board when they occurred, yet no action was taken against the Respondent for his reporting the aforementioned . . . Subsequent to the above mentioned incidents the Respondent and the Board continued to work in a professional and harmonious relationship. It was not until the Sterne incident, more specifically when the Respondent was issued a counseling memorandum for his conduct concerning the Sterne incident, that the relationship between the Respondent, Commission Feldman and the Board became less than harmonious . . . In effect, the Respondent, apparently embittered over the Board issuing him the counseling memorandum, and its refusal to remove the memorandum from his file, elected to act in an unprofessional manner towards the Commissioners and the Board.

Defs. 56.1 Stmt, Ex. D at 10. Hearing Officer Betso recommended that Plaintiff "be dismissed from his position of District Manager of the Setauket Fire District." *Id*.

On September 8, 2005, Plaintiff's counsel, Robert J. Valli, Esq., faxed a letter to Lawrence M. Monat, Esq., the attorney who represented the Setauket Fire District during the

hearing, which stated: "We understand that the Board is considering having Mr. Betso's findings reviewed by a third party. Given his complete and utter disregard for some of the evidence presented we support this decision." Defs. 56.1 Stmt, Ex. E; Defs. 56.1 Stmt ¶ 18; Pl. Revised 56.1 Stmt ¶ 18. While Plaintiff suggests that the Board decided to have Hearing Officer Betso's decision reviewed "because the Board found some question as to the impartiality of" Hearing Officer Betso, Defendants deny such assertion and contend "there is no evidence to support any questions of impartiality of" Mr. Betso. Pl. Initial 56.1 Stmt ¶ 28; Defs. Response to Pl. Initial 56.1 Stmt ¶ 28.

On September 13, 2005, the Board passed a resolution appointing Roger Maher to make a "final determination" on the matter, and on September 17, 2005 Arbitrator Maher rendered a post-hearing officer's decision. Defs. 56.1 Stmt ¶¶ 19, 21; Pl. Revised 56.1 Stmt ¶¶ 19, 21. Specifically, Arbitrator Maher made a "final determination, based on the substantial and credible evidence reviewed by him, that the Setauket Fire District accept the recommended decision of hearing officer Betso issued on 8/2/05." Defs. 56.1 Stmt, Ex. H; Defs. 56.1 Stmt ¶ 22; Pl. Revised 56.1 Stmt ¶ 22.

On September 29, 2005, Defendant Commissioner Barber, serving as the Setauket Fire District Secretary, sent Plaintiff a letter enclosing Arbitrator Maher's final determination and stating that "effective September 30, 2005, your employment with the Setauket Fire District is terminated, your employment contract is terminated for good cause, and payment of your salary will terminate as of that date." Defs. 56.1 Stmt, Ex. I; Defs. 56.1 Stmt ¶ 23; Pl. Revised 56.1 Stmt ¶ 23. Plaintiff asserts that "[t]he Board considered their options for terminating Ronald and determined that it would be more cost effective to terminate Ronald rather than paying his

severance package."  Pl. Initial 56.1 Stmt ¶ 24.  Defendants respond by admitting that "the Board has a fiduciary responsibility to the public it serves to weigh their options as to cost effective methods of resolving any problem, disputes and/or issues."  Defs. Response to Pl. Initial 56.1 Stmt ¶ 24.

Plaintiff did not file an Article 78 proceeding challenging the decision to terminate his employment.  Plaintiff states that he "did not appeal the decision of [Roger] Maher but rather filed suit in federal court for violation of his First Amendment rights and violation of state and federal whistle blowing statutes."  Pl. Revised 56.1 Stmt ¶ 24.

## III.  PLAINTIFF'S DUE PROCESS CLAIMS AND NY LABOR LAW § 740 CLAIMS

As an initial matter, Plaintiff concedes that his 14th Amendment due process claim is deficient because he did not seek review of the Board's decision to terminate his employment pursuant to Article 78 of the New York CPLR.  Mem. of Law in Opp'n to Defs.' Mot. For Summary Judgment ("Pl. Mem.") at 9-10.  Accordingly, the Court GRANTS Defendants' motion for summary judgment and dismisses Plaintiff's claims based upon an alleged violation of his 14th Amendment right to due process.

Second, Defendants assert that Plaintiff's claims under New York Labor Law § 740 are deficient as a matter of law because this statute does not apply to public employees.  Reply Mem. of Law in Further Supp. of Defs.' Mot. For Summary Judgment ("Reply Mem.") at 6.  Section 740 of the New York Labor Law prohibits an employer from taking "any retaliatory personnel action against an employee" for, *inter alia*, disclosing to a supervisor or public body an illegal activity that constitutes a danger to the public health or safety, testifying to an investigating public body, or objecting to an illegal policy or practice.  N.Y. Lab. Law § 740(2).  Section 740

of the New York Labor Law, however, "does not apply to 'public employers'; public employers are covered, instead, by New York Civil Service Law § 75-b. *Markovic v. N.Y. City Sch. Constr. Auth.*, No. 99 Civ. 10339, 2002 U.S. Dist. LEXIS 214, at *11-12 (S.D.N.Y. Jan. 8, 2002); *see also Tamayo v. City of New York*, No. 02 Civ. 8030, 2004 WL 137198, at *7 (S.D.N.Y. Jan. 27, 2004) (dismissing retaliation claim brought by city police detectives under New York Labor Law § 740); *Balduzzi v. City of Syracuse*, No. 96 Civ. 824, 1997 WL 52434, at *3-4 (N.D.N.Y. Feb. 4, 1997) (noting state court's dismissal of New York Labor Law § 740 cause of action because "Section 740 pertains only to employees in the private sector and [ ] its public employee counterpart is New York Civil Service Law § 75-b . . . [A]ny public employee . . . who has rights under section 75 of the Civil Service Law may rely only on § 75-b for redress"). Accordingly, the Court finds that because Plaintiff is a public employee[4] and because Plaintiff has also brought a cause of action under the New York Civil Service Law § 75, Plaintiff's claim under the New York Labor Law § 740 must be dismissed as a matter of law.

Plaintiff's remaining claims for violation of New York Civil Service Law § 75, Section 1983, and breach of contract will be discussed in turn.

## IV. THE PARTIES' CONTENTIONS

Defendants contend that summary judgment is appropriate as to Plaintiff's claim under New York Civil Service Law § 75 because the applicable statute of limitations has expired. Defendants assert that pursuant to Section 76(1) of the New York Civil Service Law and Article

---

[4]      *See* Defs. 56.1 Stmt ¶ 2; Pl. Revised 56.1 Stmt ¶ 2; Defs. 56.1 Stmt, Ex. O at 76 (noting that the position of Fire District Manager is a Suffolk County Civil Service job title); *see also* New York Civil Service Law § 75(1)(c) (covering each employee "holding a position in the non-competitive class . . . who since his last entry into service has completed at least five years of continuous service in the non-competitive class").

78 of the Civil Practice Law and Rules ("CPLR"), Plaintiff could have sought review of the Defendants' decision to terminate his employment within four months after the decision became final and binding upon Plaintiff. Defs. Mem. of Law ("Defs. Mem.") at 11. According to Defendants, an Article 78 review is the "exclusive remedy" available to Plaintiff to "substantively and procedurally attack the decision of the Board." *Id.* at 12-13. Defendants assert that because Plaintiff failed to appeal the Board's decision within the applicable four-month period, the decision to terminate Plaintiff's employment "is now binding" on Plaintiff, the issue "is now *res judicata*," and Plaintiff's cause of action under New York Civil Service Law § 75 must fail. *Id.* at 13-14.

With respect to Plaintiff's First Amendment claim, Defendants assert that Plaintiff's complaints "were not a matter of public concern but of a personal matter and the plaintiff was airing out grievances he had with his employers." *Id.* at 19. Defendants also contend that no causal connection existed between Plaintiff's termination and any protected speech. *Id.* Rather, Defendants state that Plaintiff was fired for misconduct for which he was found guilty after a disciplinary hearing held pursuant to New York Civil Service Law § 75. *Id.* at 19-20.

Likewise, Plaintiff's breach of contract claim lacks merit, according to Defendants, and the Board was justified in dismissing Plaintiff for cause, and without severance, pursuant to the terms of Plaintiff's employment contract. *Id.* at 21. Again, Defendants argue that "a public employee [such as Plaintiff] seeking damages for his or her termination must first bring an Article 78 Proceeding to establish the wrongfulness of the termination." *Id.* Because Plaintiff failed to first assert his breach of contract claim in an Article 78 proceeding, Defendants argue that he cannot bring such a claim in this lawsuit. *Id.* at 21-22.

Finally, Defendants assert that the decision to bring charges of misconduct against Plaintiff and to terminate his employment was made by Defendants in the exercise of their discretion. According to Defendants, this decision did not violate any statutory or constitutional right guaranteed to Plaintiff and, consequently, Defendants are entitled to qualified immunity. *Id.* at 24-25.

In opposition, Plaintiff argues that his failure to appeal Defendants' decision to terminate his employment in an Article 78 proceeding does not foreclose his ability to bring a claim under New York Civil Service Law § 75. Pl. Mem. at 10-11. Plaintiff further maintains that Defendants have waived their right to raise such a defense because Defendants failed to "file a motion to dismiss DiBiase's claims based on his failure to bring an Article 78 hearing, nor did they assert this as an affirmative defense." *Id.* at 11. Defendants counter this argument on reply by asserting that the New York Court of Appeals has held it sufficient for a defendant to plead a statute of limitations defense without articulating the specific statute or limitations period at issue. Reply Mem. at 4. Plaintiff further asserts that any defense that he "did not exhaust his administrative remedies cannot be determined to include an Article 78 hearing, because an Article 78 hearing is not an administrative remedy. Rather, an Article 78 hearing is a judicial review of the administrative decision and is not an administrative remedy in any sense of the word." Pl. Mem. at 12.

With respect to his First Amendment claim, Plaintiff states that he did address several matters of public concern. Pl. Mem. at 16. Furthermore, according to Plaintiff, there is a clear causal connection between his speech and his termination because Defendants included many of

Plaintiff's statements addressing matters of public concern as reasons for their termination of his employment.  *Id.*

Because the "cause" to terminate his employment as determined in the Section 75 hearing "was not substantiated by the facts and therefore should be overturned" and because Defendants "offer[ed] false reasons to terminate DiBiase," *id.* at 19-20, Plaintiff asserts that his employment agreement was breached.  Further, Plaintiff argues again that Defendants waived their right to raise any defense based on Plaintiff's failure to request an Article 78 hearing because they did not file a motion to dismiss on these grounds, nor did they assert this as an affirmative defense.  *Id.* at 20.

Defendants also dispute Plaintiff's allegations that any witness provided false testimony during the Article 75 hearing.  Reply Mem. at 1.  Defendants argue that Plaintiff has failed to plead any such allegations of fraud in the Complaint and thus Plaintiff has failed to meet the special pleading requirements set forth in Fed. R. Civ. P. 9.  *Id.*  Finally, Defendants contend that Plaintiff's eleventh-hour assertions of fraudulent testimony during the Article 78 hearing do not comport with his own sworn testimony during the hearing that he participated in a "full and fair hearing."  They reassert that Plaintiff was represented by counsel and had the opportunity to cross-examine each witness during the hearing.  *Id.* at 1, 8.

Finally, Plaintiff argues that Defendants are not entitled to qualified immunity with respect to their decision to terminate his employment.  Plaintiff maintains that he engaged in protected First Amendment speech and Defendants have not shown that they reasonably were unaware that their decision to terminate his employment violated his constitutional rights.  *Id.* at 21-22.

## V. STANDARD OF REVIEW

In reviewing a motion for summary judgment, the Court is guided by the tenets set forth in Federal Rule 56(c), which provides that: "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006); *Gray v. Lutheran Soc. Serv. of Metro. NY, Inc.*, No. 04-CV-2843, 2006 WL 1982859, at * 3 (E.D.N.Y. July 13, 2006). The moving party bears the burden of meeting this exacting standard, and in order to determine whether the moving party has satisfied this burden, the Court must view the evidence and all factual inferences arising from that evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fischl v. Armitage*, 128 F.3d 50 (2d Cir. 1997); *Brown v. Parkchester S. Condo., Inc.*, No. 00-CV-7235, 2006 WL 851789, at *5 (S.D.N.Y. Mar. 31, 2006).

To defeat a summary judgment motion, the non-movant must proffer affidavits, depositions, or other documentation setting forth specific facts to demonstrate that there exists a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-moving party must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990), and may not rely on allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996).

## V.    DISCUSSION

### A.    New York Civil Service Law § 75-b

Plaintiff claims that Defendants' termination of his employment violated New York Civil

Service Law § 75-b.  That statute, known commonly as the "Whistleblower's Law," provides:

> 2(a) A public employer shall not dismiss or take other disciplinary
> or other adverse personnel action against a public employee
> regarding the employee's employment because the employee
> discloses to a governmental body information: (I) regarding a
> violation of a law, rule or regulation which violation creates and
> presents a substantial and specific danger to public health or safety;
> or (ii) which the employee reasonably believes to be true and
> reasonably believes constitutes an improper governmental action
> . . . .

> 3(a) Where an employee is subject to dismissal under a . . .
> disciplinary procedure contained in a collectively negotiated
> agreement, . . . or under section seventy-five of this title . . . and the
> employee reasonably believes dismissal . . . would not have been
> taken but for the conduct protected under subdivision two of this
> section, he or she may assert such as a defense before the designated
> arbitrator or hearing officer . . . If there is a finding that the dismissal
> . . . is based solely on a violation by the employer of such
> subdivision, the arbitrator or hearing officer shall . . . reinstate the
> employee with back pay . . . .

> (c) Where an employee is not subject to any of the provisions of
> paragraph (a) or (b) of this subdivision, the employee may
> commence an action in a court of competent jurisdiction under the
> same terms and conditions as set forth in article twenty-C of the
> labor law.

N.Y. Civ. Serv. Law § 75-b(2), (3)(a) & (c).

Defendants argue that Plaintiff's claim under New York Civil Service Law § 75-b is

foreclosed by his failure to appeal the termination of his employment pursuant to Article 78 of

New York's Civil Practice Law and Rules.  In opposition, Plaintiff relies upon *Cucchi v. New*

*York City Off-Track Betting Corporation*, 818 F. Supp. 647, 658 n.16 (S.D.N.Y. 1993) for the proposition that "[b]ecause the New York State Legislature has created a special statutory scheme under which public employees can bring a cause of action when they believe they are fired for whistleblowing, [namely, New York Civil Service Law § 75-b], we do not believe that Article 78 is the exclusive remedy for a discharged public employee in whistleblower cases."

Even if Plaintiff is correct, his claim under New York Civil Service Law § 75-b fails as a matter of law because the statute permits him "to raise retaliation only as a defense to disciplinary charges and does not permit [Plaintiff to bring] a separate claim for damages" in this instance. *See Perfetto v. Erie County Water Auth.*, No. 03-CV-0439, 2006 WL 1888556, at *5 (W.D.N.Y. July 7, 2006). The statute makes clear that an employee facing retaliation "may commence an action in a court of competent jurisdiction" only when that employee "is not subject to any of the provisions of paragraph (a) . . . of this subdivision." N.Y. Civ. Serv. Law § 75-b(3)(c). As noted above, paragraph (a) of Section 75-b covers individuals whose employment was terminated in one of two ways – either pursuant to the provisions of a "collectively negotiated agreement," or, as in Plaintiff's case, after a disciplinary hearing held pursuant to Section 75 of the New York Civil Service Law. N.Y. Civ. Serv. Law § 75-b(3)(a).[5]

---

[5]     While the plaintiff in *Cucchi* was permitted to bring a separate cause of action under Section 75-b of the New York Civil Service Law, it appears that the plaintiff in that case was not subject to dismissal pursuant to either a disciplinary procedure contained in a collectively-bargained agreement or a disciplinary hearing held pursuant to Section 75 of the Civil Service Law. Thus, the plaintiff would have been permitted to commence an action pursuant to Section 75-b(3)(c). The *Cucchi* plaintiff's case is therefore distinguishable from this matter because Plaintiff DiBiase was terminated following a disciplinary hearing that was held pursuant to Section 75 of the Civil Service Law.

Here, it is undisputed that Plaintiff's employment was terminated after the Hearing Officer found him guilty of misconduct following a hearing conducted pursuant to Section 75 of the Civil Service Law. Accordingly, Plaintiff "is subject to the provisions of § 75-b(3)(a) and may not pursue a private cause of action for retaliation pursuant to § 75-b(3)(c)." *See Perfetto*, 2006 WL 1888556 at *5 (refusing to allow employee whose employment was terminated after a Section 75 hearing to initiate a lawsuit based upon an alleged violation of New York Civil Service Law § 75-b).

Accordingly, because as a matter of law Plaintiff may not bring a separate claim for damages under New York Civil Service Law § 75-b, Plaintiff's cause of action under this statute is hereby dismissed.

## B.    First Amendment Claims

Plaintiff alleges that Defendants violated his rights under 42 U.S.C. § 1983 and the First Amendment by retaliating against him for engaging in constitutionally protected speech. "A public employer may not retaliate against an employee for the employee's exercise of his or her free speech rights under the First Amendment. However, while a public employee does not lose his free speech rights when he takes a government job, the state has a legitimate interest in regulating speech by its employees in order to ensure the efficient provision of public services." *Markovic*, 2002 U.S. Dist. LEXIS at *12-13 (internal citation omitted).

To set forth a *prima facie* case of retaliation, Plaintiff must demonstrate that: (1) his speech was constitutionally protected, (2) he suffered an adverse employment action, and (3) there exists a causal connection between Plaintiff's protected speech and the adverse employment action "so that it can be said that the speech was a motivating factor in the

determination." *Washington v. County of Rockland*, 373 F.3d 310, 320 (2d Cir. 2004). If a plaintiff were to make out a *prima facie* case, then a defendant can "avoid liability by showing that [they] would have taken the same action even in the absence of the protected activity." *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 680 (S.D.N.Y. 2007) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87 (1977)). "The principle that a public employer cannot be held liable for retaliation if it would have taken the adverse action absent the employee's protected conduct 'prevents an employee who engages in unprotected conduct from escaping discipline for that conduct by the fact that it was related to protected conduct.'" *Id.* (quoting *Heil v. Santoro*, 147 F.3d 103, 110 (2d Cir. 1998)).

1.    ***Constitutionally Protected Speech***

a.    **Legal Standard for Protected Speech**

"Whether particular speech is or is not protected under the First Amendment is a question of law." *Markovic*, 2002 U.S. Dist. LEXIS at *14. "Speech that touches on a matter of public concern is constitutionally protected. Matters of public concern have political or social import to the community, but this does not include merely personal grievances." *Singh*, 418 F. Supp. 2d at 404 (citing *Connick v. Myers*, 461 U.S. 138, 145-46 (1983)) (internal citation omitted). "Speech relates to a matter of public concern if it may fairly be construed as relating to any matter of political, social, or other concern to the community." *Markovic*, 2002 U.S. Dist. LEXIS at *15.

"The threshold question is whether the plaintiff was 'speaking as a citizen upon matters of public concern.'" *Benvenisti v. City of New York*, No. 04 Civ. 3166, 2006 WL 2777274, at *7 (S.D.N.Y. Sept. 23, 2006) (quoting *Connick*, 461 U.S. at 147). A recent decision from the Supreme Court clarified that this threshold question involves two separate inquiries. First, the

18

Court must determine whether the plaintiff was "speak[ing] as a citizen" under the First Amendment. *See Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). If this initial question is answered in the affirmative, the Court "must then conduct the analysis set forth in *Connick* and establish whether, 'viewing the record as a whole and based on the content, context, and form of a given statement, the plaintiff's speech was made as a citizen upon matters of public concern.'" *Mulcahey v. Mulrenan*, No. 06 Civ. 4371, 2008 WL 110949, at *4 (S.D.N.Y. Jan. 3, 2008) (quoting *Connick*, 461 U.S. at 147-48).

                  **b.**      **Preclusive Effect of Hearing Officer Betso's Findings of Fact**

       With one exception discussed below, the instances of speech for which Plaintiff claims First Amendment protection, *see* Pl. Mem. at 17-18, are all encompassed in the Specifications of Misconduct and were raised during Plaintiff's Section 75 hearing. Hearing Officer Betso made specific findings of fact as to each of these instances of speech. *See* Defs. 56.1 Stmt, Ex. D. It is well-settled that "when a state agency 'acting in a judicial capacity . . . resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' . . . federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *Univ. of Tenn. v. Elliot*, 478 U.S. 788, 798 (1986) (quoting *U.S. v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). Thus, as the Second Circuit has noted, "issue preclusion based on unreviewed state agency [fact] determinations is appropriate in § 1983 civil rights action." *Doe v. Pfrommer*, 148 F.3d 73, 79 (2d Cir. 1998); *Walker v. Triborough Bridge & Tunnel Auth.*, No. 89 CIV 0371, 1990 WL 52139, at *6 (S.D.N.Y. Apr. 17, 1990) (giving preclusive effect to issues deciding during Section 75 hearing).

Collateral estoppel, or issue preclusion, applies when: (1) identical issues have been decided in the prior action; (2) the issues will be decisive in the present action; and (3) the party to be precluded from re-litigating the issues had a full and fair opportunity to contest the prior determination. *See Pfrommer*, 148 F.3d at 79. In addition, "[w]hen the doctrine of collateral estoppel is applied to the determinations of administrative agencies, New York courts [ ] require the agency's determination be 'quasi-judicial' in character rather than legislative." *Dudzik v. City of New York*, No. 01 Civ. 2450, 2003 WL 203226, at *8 n.11 (S.D.N.Y. Jan. 29, 2003) (quoting *Long Island Lighting Co. v. Imo Industries, Inc.*, 6 F.3d 876, 885 (2d Cir. 1993)).

Here, the issues raised in this action – specifically the factual issues regarding whether Plaintiff committed certain acts of misconduct, including the instances of speech for which he now seeks First Amendment protection – were raised and decided during Plaintiff's Section 75 hearing. These issues, moreover, are decisive in this action. As is clear from the transcripts submitted to the Court, the proceeding before Hearing Officer Betso was clearly quasi-judicial, rather than legislative, in nature. *See, e.g.*, Defs. 56.1 Stmt, Ex. O.

With respect to the fairness of the Section 75 hearing, and raised for the first time in opposition to the instant motion for summary judgment, Plaintiff assets an issue as to the fairness of his Section 75 hearing. Plaintiff does not dispute that he was represented by counsel during the hearing or that he testified in response to an inquiry from Hearing Officer Betso that he had a "full and fair" hearing. Pl. Revised 56.1 Stmt ¶ 15-16. Nevertheless, Plaintiff now asserts that "[i]t is not agreed, however, that Ronald had a full and fair hearing given the irrational results and findings contrary to the facts submitted and drawn out during the course of the hearing." *Id.* at ¶ 16. Plaintiff contends in his opposition papers that "only two members of the Board testified

on behalf of the District," that "false testimony was entered against [Plaintiff]," and that "[f]abrications in [the two Board members'] testimony were made obvious, but ignored by the hearing officer."  Pl. Mem. at 2.  The Court finds Plaintiff's arguments insufficient to create an issue of fact as the fairness of his Section 75 hearing.

As noted above, it is undisputed that Plaintiff was represented by counsel during the hearing.  Furthermore, at the conclusion of the hearing, Plaintiff stated on the record that he had a "full and fair" hearing.  After receiving Hearing Officer Betso's decision, Plaintiff's counsel learned that the Board, on its own initiative, was considering having Hearing Officer Betso's decision reviewed by a third party.  In a September 8, 2005 letter to the Board's attorney, Plaintiff's counsel "support[ed] this decision."  Defs. 56. 1 Stmt, Ex. E.  In that same letter, Plaintiff's counsel expressed displeasure that only two Board members testified during the hearing and further stated his opinion that Hearing Officer Betso displayed "a complete and utter disregard for some of the evidence presented," although he did not specify what evidence had been disregarded.  *Id.*  Nowhere in the September 8, 2005 letter did Plaintiff's counsel make any accusation that false testimony was given during the Section 75 hearing.  *Id.*

When the matter was transferred to Arbitrator Maher for a review (an act which Plaintiff implies was done because the Board had issues about any perceived lack of fairness – an implication not subsequently supported by presentation of any helpful evidence), Plaintiff did not submit any supplemental statement pointing to any false testimony given during the initial hearing.  Nor did Plaintiff submit any further evidence that had not been presented to Hearing Officer Betso.  It is also undisputed that Plaintiff never filed an Article 78 proceeding to

challenge the finding of Hearing Officer Betso or the affirmation of that finding by Arbitrator Maher.

The Complaint, filed more than one year after the conclusion of the Section 75 hearing, does not contain any allegations that false testimony was given during the Section 75 hearing nor does it allege that Hearing Officer Betso disregarded any evidence. The Complaint states simply that "[t]hroughout the Spring and Summer of 2005 an Article 75 hearing was held regarding charges against DiBiase." Compl. ¶ 67. To this day, Plaintiff has not specified exactly what false testimony was presented during the Section 75 hearing, has not identified which evidence was disregarded by Hearing Officer Betso, and has not articulated why the Section 75 hearing was not "fair" since Plaintiff was represented by counsel and was able to cross-examine each testifying witness. Moreover, this is not a situation in which Plaintiff acquired some exculpatory evidence that was not available during the hearing – aside from bald allegations of false testimony, Plaintiff has failed to articulate to this Court why his Section 75 hearing was not fair. Instead, it appears to the Court that Plaintiff's allegations stem from his unhappiness with the outcome of the Section 75 hearing.

Accordingly, the Court finds that no reasonable finder of fact could conclude that Plaintiff was not afforded a full and fair opportunity to contest the Specifications of Misconduct during his Section 75 hearing. Since the Section 75 hearing "comported with the issue preclusion requirements under New York law," Hearing Officer Betso's "findings of fact are preclusive in this action." *See Dudzik v. City of New York*, 2003 WL 203226 at *8; *see also McAllan v. Von Essen*, 517 F. Supp. 2d 672, 684 (S.D.N.Y. 2007) ("Although plaintiff continues to argue that the initiation of disciplinary proceedings against him was 'in bad faith', plaintiff had

a full and fair opportunity in the [ ] administrative proceeding to litigate the propriety of his failure to obey the May 3 order and is thus estopped from denying his misconduct."); *Harrison v. Arlington Cent. Sch. Dist.*, 60 F. Supp. 2d 186, 190 (S.D.N.Y. 1999) (concluding, after reviewing transcript from Section 75 hearing, that the "plaintiff was afforded all the rights necessary to give that determination preclusive effect").

### c. Application

Plaintiff has identified the following speech for which he claims he was terminated in violation of his First Amendment rights. First, Plaintiff cites numerous instances of speech and conduct which were included in the Specifications of Misconduct lodged against him. *See generally* Pl. Mem. at 17-18. It is undeniable that these were all at issue during the Section 75 hearing. As discussed above, Hearing Officer Betso's findings of fact as to each of these incidents is given preclusive effect. *See generally* Defs. 56.1 Stmt, Ex. D.

*Hearing Officer Betso's Finding as to Specification Number 2*

After Plaintiff suspended David Sterne from the position of lead paramedic, on April 9, 2004, Defendant Commissioner Feldman directed Plaintiff to reinstate Mr. Sterne. Plaintiff initially refused to reinstate Mr. Sterne and later "responded that [Mr. Sterne] would be reinstated but that [Plaintiff] would not be doing the scheduling or any EMS ordering until the Board had ample time to review [Plaintiff's] concerns." Plaintiff did restore Mr. Sterne to the position of lead paramedic on April 13, 2004 after being so directed a second time but, as a result of Plaintiff's refusal to obey Defendant Commissioner Feldman's initial directive, Mr. Sterne was improperly suspended from his duties for a four-day period.

*Hearing Officer Betso's Finding as to Specification Number 3*

During a meeting of the Board of Fire Commissioners on April 14, 2004, Plaintiff stated that due to the incident surrounding David Sterne, Plaintiff felt that Defendant Commissioner Feldman was creating a hostile work environment.

*Hearing Officer Betso's Finding as to Specification Number 5*

Plaintiff wrote an April 28, 2004 letter responding to the April 28, 2004 counseling memorandum he received. This letter was "both confrontational and belligerent in tone" and "makes numerous demands of the Board, which [Plaintiff's] position does not entitle him to do, and makes numerous unfounded allegations." The letter was "disruptive to the operation of the Fire District."

*Hearing Officer Betso's Finding as to Specification Number 7*

On August 2, 2004, Plaintiff sent an email to the Board which contained unfounded allegations that "with respect to the scheduling of dispatchers, [Defendant] Commissioner Richard Leute has a conflict of interest and that 'he has instituted a program of retaliation against me as District Manager.'"

*Hearing Officer Betso's Finding as to Specification Number 8*

During a September 15, 2004 Board meeting, Plaintiff "accused Commissioner Leute of 'lying' with respect to his recollection of what he previously said at a meeting held on or about September 9, 2004 concerning when the matter of the election of the Chairman of the Board of Elections would be discussed."

*Hearing Officer Betso's Finding as to Specification Number 9*

On September 14, 2004, Plaintiff was directed by the Board and Defendants Commissioners Feldman and Parlatore to have a certain list of vendors, addresses, account numbers, and contacts printed up for each Board member, but in a series of emails Plaintiff "refused to comply with this directive and refused to abide by the instructions of the Board and Commissioners Feldman and Parlatore."

*Hearing Officer Betso's Finding as to Specification Number 10*

On September 21, 2004, Plaintiff "sent a memo to [Defendant] Commissioner Barber concerning a certain incident involving [Defendant] Commissioner Feldman and employee Julie Cupolo. In that memo, [Plaintiff] stated, with reference to the Cupolo incident, 'that Commissioner Feldman be held accountable for his actions and offer a public apology to Ms. Cupolo, and be asked to resign as Fire Commissioner.'" Although Plaintiff had been directed by Defendant Commissioner Barber to investigate an incident that had occurred between Cupolo and Defendant Feldman, Plaintiff was not directed to make any recommendations. As a result, Plaintiff's unsolicited recommendation was inappropriately beyond the scope of his directive and his job duties.

*Hearing Officer Betso's Finding as to Specification Number 14*

On or about October 14, 2004 during an executive session of the Board, Plaintiff stated that all Board members were "going to pay" for their issuance of the April 2004 counseling memorandum and refusal to remove it from Plaintiff's file.

*Hearing Officer Betso's Finding as to Specification Number 15*

Plaintiff "repeatedly refused to obey the directions of Board Commissioners unless such directions are first approved by a majority of the Board." The evidence presented during the hearing indicated that this was a matter for the Board to address and that "when a Commissioner acted outside the majority of the Board, the Board would take the necessary action to correct the situation."

Plaintiff argues that his speech as set forth in Specification Number 2 is protected under the First Amendment because he was "speaking out as to David Sterne's possible lack of ability to perform his job" which touches on a matter of public concern. *See* Pl. Mem. at 17. Plaintiff, however, engaged in this speech while in his official job capacity as District Manager, not as a private citizen. Thus, this situation falls squarely within the purview of the Supreme Court's decision in *Garcetti v. Ceballos*. In *Garcetti*, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421; *see also Weintraub v. Bd. of Educ. Of the City of N.Y.*, 489 F. Supp. 2d 209, 215 (E.D.N.Y. 2007) ("*Garcetti* held that a public employee's speech is not protected by the First Amendment when speaking as an employee rather than as a citizen, and found the dispositive distinction between the two roles to be whether the speech was made pursuant to the employee's official duties or was not required by those duties.").

As District Manager, Plaintiff was responsible for "manag[ing] the administrative, financial and personnel functions of [the] fire district." Valli Aff'n, Ex. 6. Here, the parties do

not dispute that Plaintiff opined to the Board as to the ability of Mr. Sterne to work as lead paramedic as part of these job duties as District Manager.[6] Plaintiff "did not act as a citizen when he went about conducting his daily professional activities," including providing the Board with feedback as to Mr. Sterne's suitability to serve as lead paramedic. *See Garcetti*, 547 U.S. at 422 ("[w]hen he went to work and performed the tasks he was paid to perform, [the plaintiff] acted as a government employee"). Therefore, the speech set forth in Specification Number 2 cannot be deemed protected speech under the First Amendment.

The incidents of speech outlined in Specifications 3, 5, 7, and 14 were made by Plaintiff as a citizen, rather than in his capacity as District Manager. None of this speech, however, touches on matters of public concern. Rather, this speech relates only to "matters of personal interest" to Plaintiff, and so "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to an employee's behavior." *Singh*, 418 F. Supp. 2d at 404 (quoting *Connick*, 461 at 147) (internal quotation marks omitted). Accordingly, none of the incidents of speech set forth in Specifications 3, 5, 7, and 14 is protected by the First Amendment.

With respect to the speech set forth in Specification Number 8, it is impossible to tell, from the record provided to the Court on this motion, whether Plaintiff made this speech as a citizen or as part of his official job duties as District Manger. Even if Plaintiff spoke in his capacity as a citizen, however, his speech is not protected as it does not touch on matters of

---

[6]     Although the parties do dispute whether Plaintiff had the authority to relieve Mr. Sterne of his duties, it is clear that Plaintiff's inquiry into Mr. Sterne's fitness for the position and his subsequent statement on his opinion on that matter were made as part of his normal job duties.

public concern.[7]  Accordingly, the speech set forth in Specification Number 8 is not protected by the First Amendment.

With respect to the speech set forth in Specification Number 9, the Court has reviewed the September 17, 2004 email that Plaintiff sent to Defendant Feldman in response to Defendant Feldman's request for a print-out of certain vendor names, account numbers, contact names, and telephone numbers.  Valli Aff'n, Ex. 17.  The Court finds that this email communication was made by Plaintiff in his official capacity as District Manager and as part of his normal job duties and was not sent by Plaintiff in his capacity as a citizen.  Accordingly, this email does not constitute protected speech under the First Amendment.

The September 21, 2004 memorandum at issue in Specification Number 10 recounts Plaintiff's interview with dispatch employee Julie Cupolo, his summary of her complaints about an incident that occurred between her and Defendant Commissioner Feldman, and Plaintiff's recommendation that Defendant Feldman offer a public apology to Ms. Cupolo and resign as a Fire Commissioner.  Valli Aff'n, Ex. 15.  Defendants acknowledge that Plaintiff was asked to undertake an investigation of Ms. Cupolo's workplace complaint.  Defs. Response to Pl. Initial 56.1 Stmt ¶ 21; *see also* Defs. 56.1 Stmt, Ex. D at Specification No. 10 (noting that Defendant Commissioner Barber had "directed" Plaintiff to conduct this investigation).  Accordingly, the

---

[7]      Plaintiff contends in his Memorandum of Law in opposition to the motion for summary judgment that during the September 15, 2004 Board meeting he spoke about Defendant Commissioner Leute's "lies regarding altering official District Minutes."  Pl Mem. at 17-18. However, the Court is required to give preclusive effect to the factual findings of Hearing Office Betso, who found that Plaintiff "accused Commissioner Leute of 'lying' with respect to his recollection of what he previously said at a meeting held on or about September 9, 2004 concerning when the matter of the election of the Chairman of the Board of Elections would be discussed."

memorandum that flowed from the Cupolo investigation was clearly written as part of Plaintiff's job duties. *See Mulcahey*, 2008 WL 110949 at *6 (noting that "job descriptions are not dispositive of whether a duty is official" and that common logic can aid a court in determining whether conduct was part of a plaintiff's official job duties). Accordingly, this memorandum likewise does not constitute protected speech under the First Amendment.

Finally, Specification Number 15 states that Plaintiff "repeatedly refused to obey the directions of Board Commissioners unless such directions are first approved by a majority of the Board." Plaintiff contends that he "reasonably believed that acting on the whims of individual Board members created a substantial and specific danger to the public health and safety." Pl. Mem. At 18. Beyond this generalized statement, however, Plaintiff does not specify what the "whims" of the Board members were nor does he explain how acting on such "whims" would lead to any issues having political or social import to the community. *See Benvenisti*, 2006 WL 2777274 at *11 ("[t]he plaintiff cannot now convert what were essentially internal office affairs into matters of public concern through a revisionist interpretation of his complaints that draws on the incidental connection between events that transpire within a government office and public issues"). Therefore, none of the conduct described in Specification Number 15 is entitled to First Amendment protection.

In addition to those instances enumerated in the Specifications of Misconduct, Plaintiff contends that he engaged in protected speech when he reported Defendant Commissioner Feldman's alleged unauthorized access of the RedAlert system as well as Feldman's attempt to issue an identification card to an individual who was not a member of the Fire District. The Court finds that Plaintiff reported Defendant Commissioner Feldman's alleged improper

accessing of the RedAlert System to the Board as part of his job duties as District Manager rather than as a citizen. *See* Valli Aff'n, Ex. 2. As Plaintiff's April 24, 2004 memorandum to the Board recounts, "the Board also tasked the District Office to proof [the RedAlert] system" and ensure the system's accuracy. Plaintiff was informed about Defendant Commissioner Feldman's access of the RedAlert system "by the individual tasked with working with the RedAlert system every day." Thus, Plaintiff's speech relating to Defendant Commissioner Feldman's access of the RedAlert system is not protected under the First Amendment.

By contrast, it is not clear on the record before this Court the capacity in which Plaintiff spoke when he reported to the Board Commissioner Feldman's alleged attempt to improperly issue a District identification card. Information about a Fire District Commissioner improperly issuing an identification card to an individual outside the Fire District arguably touches on a matter of public concern. *Benvenisti*, 2006 WL 2777274 at *10 ("[a]llegations of public corruption or wrongdoing are almost always matters of public concern"). Drawing all inferences in favor of Plaintiff, if he made this report as a citizen, then this would constitute protected speech under the First Amendment.

Therefore, Plaintiff has satisfied the first element of his First Amendment retaliation claim solely with respect to his statements reporting Defendant Commissioner Feldman's alleged inappropriate issuance of a District identification card to a non-District member.

> **2.** ***Adverse Employment Action***

An adverse employment action, in the First Amendment retaliation context, is one that "well might have dissuaded a reasonable worker from asserting First Amendment-protected rights." *McAllan*, 517 F. Supp. 2d at 680 (quoting *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217,

227 (2d Cir. 2006)) (internal quotation marks and alterations omitted). Plaintiff must demonstrate that the adverse employment action is of the type that would "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Washington v. County of Rockland*, 373 F.3d 320 (2d Cir. 2004).

Plaintiff contends that as a result of his protected speech, Defendants brought charges of misconduct against him that ultimately resulted in his termination. It is undisputed that Defendants delivered to Plaintiff a copy of charges of misconduct against him on November 30, 2004, commenced a Section 75 hearing as to those Specifications of Misconduct on February 17, 2005, and ultimately terminated Plaintiff's employment on September 30, 2005. Here, the Court finds that Defendants' imposition of charges of misconduct against Plaintiff as well as Defendants' ultimate termination of Plaintiff's employment as District Manager constituted adverse employment actions. Termination of employment "is unquestionably an adverse employment action." *Markovic*, 2002 U.S. Dist. LEXIS 214 at *17 (citing *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999) ("Adverse employment actions include discharge . . . .")).

### 3. *Causal Connection*

A plaintiff may prove causation either directly or indirectly. *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). A plaintiff can prove causation indirectly "by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence." *Id.* Here, even assuming that Plaintiff's reporting of Defendant Feldman's attempt to secure an identification card for a non-District member constituted protected speech, Plaintiff has failed to establish a causal link between that speech and

Defendants' lodging the Specifications of Misconduct against him and terminating his employment.

Hearing Officer Betso found no causal link between Plaintiff's reporting of Defendant Feldman's improper issuance of the District identification card and any retaliatory action on the part of Defendants. As discussed above, this factual finding is entitled to preclusive effect. Even if such finding were not binding on this Court, however, the Court still finds that Plaintiff has not put forth sufficient evidence of a causal link to survive summary judgment. First, Plaintiff has proffered no direct evidence of any causal connection between his reporting of Defendant Feldman's conduct and the initiation of disciplinary proceedings against him. Specifically, Plaintiff can point to no record evidence of any statements by any Defendant that Plaintiff would be subject to discipline for his protected speech. In fact, not only did Defendants decline to discipline Plaintiff for making this report, but the Board took action to investigate Defendant Commissioner Feldman and referred the matter to an outside government agency. *See* Defs. 56.1 Stmt, Ex. D at 10; Defs. Response to Pl. Revised 56.1 Stmt, Ex. V.

Moreover, more than eighteen months passed between February 2003 when Plaintiff reported Defendant Feldman's conduct to the Board and November 30, 2004 when Plaintiff received notice that charges of misconduct were being filed against him. "Within this Circuit, district courts have held that the causal connection can be established when the adverse employment action follows within a couple months of the protected speech." *Perfetto*, 2006 WL 1888556 at *16 (citing *Calabro v. Nassau Univ. Med. Ctr.*, 424 F. Supp. 2d 465, 473 (E.D.N.Y. 2006)). Therefore, because of such an attenuated period of time, there is no temporal proximity between Plaintiff's protected speech and the institution of disciplinary proceedings against him.

As such, there is no evidence to support a causal connection. *See Burkybile v. Bd. of Educ. of the Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 314 (2d Cir. 2005) (finding "the passage of time and the Board's actions defeat any showing of causation" when "more than a year passed" between the plaintiff's protected speech and the imposition of discipline); *Markovic*, 2002 U.S. Dist. LEXIS at *25 (finding eight month time period between speech and employee's termination was "insufficient to suggest a causal connection"); *Donlon v. Group Health Inc.*, No. 00 Civ. 2190, 2001 WL 111220, at *3 (S.D.N.Y. Feb. 8, 2001) (finding eight-and-a-half month time lapse did not give rise to an inference of causation).

Therefore, even when the Court views the record in the light most favorable to Plaintiff, he has failed to put forth evidence sufficient to raise a genuine issue of fact as to the existence of a causal connection between his reporting to the Board Defendant Feldman's inappropriate issuance of a District identification card and the termination of his employment.

### 4. *Conclusion*

Accordingly, because Plaintiff has failed to demonstrate the existence of any genuine issue of fact whether Defendants violated Plaintiff's First Amendment rights, Defendants' motion for summary judgment as to Plaintiff's Section 1983 claim is GRANTED.

### C. Breach of Contract Claims

Plaintiff contends that "prior to deciding to terminate [Plaintiff's employment] for cause, the District determined that it would be less costly to terminate DiBiase [for cause] than to pay him his severance package [in connection with the termination of his employment without cause], as required under his employment contract." Pl. Mem. At 7. According to Plaintiff, the

termination of his employment "was not for cause, but, rather, the reasons for his termination were fabricated in an effort to save the District money." *Id.* at 19.

Defendants contend that Plaintiff's breach of contract claim is barred based upon Plaintiff's failure to challenge Defendants' decision to terminate his employment by way of an Article 78 proceeding. The New York Civil Service Law provides that any public employee "believing himself aggrieved by a penalty or punishment of . . . dismissal from service . . . imposed pursuant to the provisions of section seventy-five of this chapter, may appeal from such determination either by an application to the state or municipal commission having jurisdiction, or by an application to the court in accordance with the provisions of article seventy-eight of the civil practice law and rules." N.Y. Civ. Serv. Law § 76(1). During an Article 78 proceeding, the employee can raise, *inter alia*, the following issues: (I) "whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed;" or (ii) "whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence." N.Y. CPLR § 7803(3), (4).

It is well-established that an Article 78 proceeding "is the exclusive remedy to a discharged public employee" and "a discharged public employee must seek reinstatement in an article 78 proceeding as a condition precedent to obtaining back salary." *Austin v. Bd. of Higher Educ. Of the City of New York*, 5 N.Y.2d 430, 440-441 (1959); *see also Camacho v. Brandon*, 56 F. Supp. 2d 370, 380 (S.D.N.Y. 1999) (noting that if plaintiff had failed to commence an Article 78 proceeding challenging his termination "[i]t therefore appears that plaintiff is asking this

Court to function as a state tribunal and conduct an Article 78 hearing. We decline any such assignment."). It is equally well-established, however, that "article 78 is inapplicable to contract actions against the state government that seek damages as the principal remedy." *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996) (citing *Golomb v. Board of Educ.*, 460 N.Y.S.2d 805 (N.Y. App. Div. 1983)).

The Second Circuit has found that "this seeming contradiction is reconciled by New York's view that public employment claims were historically based on property rather than contract principles:"

> New York is heir to ancient common law principles that analyze public employment cases, including salary claims, as matters of property rather than contract law: An officer holds title to his office, and a tenured employee holds title to his position; therefore removal or dismissal in violation of law is analyzed in terms of ouster rather than defeasance of title or breach of contract, thus permitting recourse to proceedings under . . . article 78 to obtain a reinstatement to the office or position and all is emoluments.

*Finley*, 79 F.3d at 1291 (quoting *State Div. Of Human Rights on Complaint of Geraci v. N.Y. State Dep't of Corr. Servs.*, 456 N.Y.S.2d 63, 75 n.8 (N.Y. App. Div. 1982)).

Here, the gravamen of the third cause of action in the Complaint is a challenge to Defendants' decision to terminate Plaintiff's employment. *See* Defs. 56.1 Stmt, Ex. K at ¶¶ 79-83. As such, Plaintiff's claims "should have been presented first by way of an article 78 proceeding." *Ingrassia v. County of Sullivan*, 262 F. Supp. 2d 116, 121 (S.D.N.Y. 2003); *see also Finley*, 79 F.3d at 1293 (finding that if the plaintiff's employment was terminated "all claims on appeal (including her back pay claim) depend on a right to reinstatement, an issue that, as *Austin* requires and the district court held, must be first addressed in an article 78

34

proceeding."); *Faillace v. Port Auth. of N.Y. & N.J.*, 517 N.Y.S.2d 941, 947 (N.Y. App. Div. 1987) (finding that the "appropriate vehicle" for Plaintiff's breach of employment contract claim was through an Article 78 proceeding).

Plaintiff's specific reference to a breach of contract in the Complaint's third cause of action does not alter this conclusion. In *Finley*, the plaintiff, attempting to evade the requirement that she challenge the termination of her employment in an Article 78 proceeding, cast her claim "as one for breach of the 'fundamental terms of her employment relationship' rather than as a challenge to an administrative decision to terminate her." *Finley*, 79 F.3d at 1292. The Second Circuit noted that the cases relied upon by the plaintiff all involved the suspension, rather than termination, of employment and noted that "[w]rongful suspension denies the employee salary during the period of employment and may therefore be viewed in terms of a contract right." *Id.* at 1293. The *Finley* court held, however, that in termination cases where "[t]he wrongfulness of . . . [plaintiff's] termination from public office is thus the key ingredient to any recovery, [ ] that is a matter which may only be tested judicially in a proceeding, pursuant to CPLR Article 78." *Id.* (quoting *Austin*, 5 N.Y.2d 430) (first alteration added).

Therefore, because Plaintiff was terminated from his employment with Defendants but did not challenge this termination through an Article 78 proceeding, Plaintiff's breach of contract claim "does not involve a contract right properly reviewable by this Court." *See Ingrassia*, 262 F. Supp. 2d at 121. Because the four-month statute of limitations period governing Article 78 proceedings has expired, Plaintiff cannot pursue an Article 78 proceeding in any court. *See id.*[8]

---

[8]     Contrary to Plaintiff's assertions and as noted previously in this Memorandum and Decision, Defendants have not waived their right to raise the statute of limitations defense because the Answer specifically asserts the affirmative defense of the statute of limitations. It is

Therefore, Defendants' motion to dismiss Plaintiff's breach of contract claim is hereby GRANTED.

## VI. CONCLUSION

For all of the reasons set forth above, Defendants' motion for summary judgment is hereby GRANTED and Plaintiff's Complaint is dismissed in its entirety.[9]  The Clerk of the Court is directed to mark this case closed and to enter judgment in favor of the Defendants.

**SO ORDERED.**

Dated:  Central Islip, New York
        September 30, 2008

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge

---

well-settled under New York law that it is "sufficient under CPLR 3013 that respondent plead[ ] the 'statute of limitations' as a defense; it [is] not required to identify the statutory section relied on or to specify the applicable period of limitations."  *Immediate v. St. John's Queens Hosp.*, 397 N.E.2d 385, 386 (N.Y. 1979); *Magat v. County of Rockland*, 697 N.Y.S.2d 114, 115 (N.Y. App. Div. 1999) (applying the rule in *Immediate* to find the defendant adequately pleaded the statute of limitations defense against plaintiff's Article 78 proceeding challenging the termination of his employment).

[9]     Because the Court has dismissed each of Plaintiff's claims, the Court finds it unnecessary to discuss Defendants' contentions that they are entitled to qualified immunity.